**BARTON & STORTS, P.C.**
**271 North Stone Avenue**
**Tucson, Arizona 85701**
**(520) 882-2802**
**(520) 882-5785 (Fax)**
**Brick P. Storts, III**
lawoffice@brickstorts.com
**Arizona State Bar No. 004507**
**Attorney for: Petitioner, Judy Minley**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Judy Minley,**<br><br>          **Petitioner,**<br><br>**vs.**<br><br>**David Shinn, Director, Arizona Department of Corrections; and Mark Brnovich, Attorney General of the State of Arizona,**<br><br>          **Respondents.** | **No.  _____**<br><br>**_____**<br>**Pima County Superior Court Cause No. CR-2013-1358-002**<br>**_____**<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner, JUDY MINLEY, by and through her counsel undersigned, BRICK P. STORTS, III, hereby submits her Petition for Writ of Habeas Corpus pursuant to *28 U.S.C. § 2254.*

RESPECTFULLY SUBMITTED this  8th  day of October, 2019.

**BARTON & STORTS, P.C.**

*s/ Brick P. Storts, III*
Brick P.  Storts, III
Attorney for Petitioner

## PETITION

1.    (a)    The name and location of the state court that entered judgment of the

conviction being challenged:  Pima County Superior Court, 110 W. Congress,

Tucson, Arizona 85701; Judge Christopher Browning, Division 27.

(b)    The criminal case number is: CR 2013-1358-002.

2.    (a)    The date of judgment was March 16, 2017.

(b)    The date of sentencing was May 1, 2017.

3.    The sentence was to natural life in prison on the felony murder charged in

Count One of the indictment; on Count Two she was sentenced to seventeen

(17) years to run consecutively to Count One; and on Count Three, she was

sentenced to seventeen (17) years to be run consecutively to both Count One

and Count Two.

4.    Yes, Ms. Minley was convicted of more than one crime.

5.    Ms. Minley was charged with one count of first degree felony murder, one

count of intentional or knowing child abuse, and one count of child abuse

based on alleged failure to seek medical attention.  The State sought the death

penalty until one month prior to trial.

6.    (a)    There was no plea agreement in this case.

(b)    Ms. Minley pled not guilty to all of the charges alleged.

(c)     The case was tried before a twelve-person jury.

7.     Ms. Minley did not testify at her trial.

8.     There was a timely appeal.

9.     (a)     The appeal was to the Arizona Court of Appeals, Division Two.

(b)     The case number in the Court of Appeals is: 2 CA-CR 2017-0173.

(c)     The Court of Appeals affirmed the convictions and sentence in a Memorandum Decision.  (Exhibit 1)

(d)     The Memorandum Decision is dated December 21, 2018.

(e)     The Westlaw cite to the case is 2018 WL 6721963.

(f)     There were four issues raised on direct appeal:

(1)     The trial court erred in failing to give a voluntary intoxication instruction in order for counsel to argue the legal instructions to the defense of involuntary intoxication of the co-defendant, who inflicted the wounds that caused the death of the child.

(2)     The trial court erred in failing to grant the motion for directed verdict.

(3)     The State failed to present evidence to prove all of the elements of the charges.

(4)     The State effectively vouched for its case in violation of Ms. Minley's due process rights.

(g)    Further review was sought by a higher state court.

    (1)    A Petition for Review from the Arizona Court of Appeals, Division Two, was sought in the Arizona Supreme Court.

    (2)    The case number is CR-19-0019-PR.

    (3)    The result was that the Arizona Supreme Court denied review.

    (4)    Review was denied on May 28, 2019.  (Exhibit 2).  A Mandate issued on July 24, 2019.  (Exhibit 3).

    (5)    There is no citation to the case for the Petition for Review.

    (6)    The grounds raised in the Petition for Review were:

        (i)    The Court of Appeals erred in failing to remand the case on the basis of the denial of a basic constitutional right to present a defense, because the trial court failed to give proper instructions on an involuntary act, that went to the crux of the defense, as previously determined by the same Court of Appeals in a Special Action on the issue.

        (ii)    The Court of Appeals failed to consider the facts as they were presented at trial and the insufficiency of the evidence on the issue that Petitioner's actions constituted a failure to seek

medical attention to support the charge of child abuse, by failing to grant a motion for directed verdict on this issue.

(iii)   The Court of Appeals erred in failing to hold that the instructions on proximate cause were insufficient to have the jury determine that the proximate cause of the death were the result of blows incurred by Ms. Minley's co-defendant and were not the acts of Ms. Minley.   As a result, the trial court effectively eliminated the fact that "but for" the actions of Ms. Minley's co-defendant, the child would not have died.

10.   No other appeals, applications, or motions concerning this judgment of conviction have been made in any state court.

11.   N/A.

12.   Grounds claimed as violations of the law of the United States and the Constitution of the United States.

**GROUND ONE:**

<u>**THE PETITIONER WAS PRECLUDED FROM PROPERLY ARGUING THE CRUX OF HER DEFENSE BECAUSE OF THE TRIAL COURT'S FAILURE TO INSTRUCT ON INTOXICATION THAT COULD BE APPLIED TO HER CO-DEFENDANT**</u>

During the time that this case was pending before the state trial court, the defense filed a Special Action in the Arizona Court of Appeals, Division Two in defending Ms. Minley's due process right to pursue a full and complete defense to the charges against her pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  The very purpose of the filing of the Special Action was to enable Ms. Minley to present evidence relating to her co-defendant, James Robinson, that demonstrated that he was involuntarily intoxicated at the time that **<u>he</u>** committed the acts that ultimately caused the death of Ms. Minley's child.

The defense wanted to show that then Sgt. Robinson's actions were caused by "emergent delirium" and the effects of "chronic solvent intoxication."  The defense noticed an expert witness to testify to Mr. Robinson's condition at the time of the incident on March 20, 2013, as a defense to Ms. Minley's culpability and intent. However, the State filed an objection to the testimony of Dr. Edward French, Dr. Raymond Singer, and Dr. Robert Crago.  The prosecution's objection was sustained

by the trial court, and the testimony was precluded.  Thus, the Special Action was filed to reverse that decision.

The Arizona Court of Appeals granted relief to the defense, finding that the evidence was relevant to Ms. Minley's intent and knowledge that her child would be in any danger or injured.  See *Minley v. Browning*, 2016 WL 2585925 (May 4, 2016)[1] (Memorandum Decision from Special Action in Case No. 2CA-SA-2016-0006 filed May 4, 2016) (Exhibit 4).  The Court of Appeals found that the expert testimony relating to Mr. Robinson's behavior and intoxication were relevant to whether Ms. Minley committed the crime of child abuse.

In fact, in that Special Action, the Court of Appeals indicated that the very "core" of Ms. Minley's defense was that she did not know nor could she have known that her child would be in danger and/or injured.  As the Court of Appeals stated, "Evidence that she could not have predicted Robinson's behavior is plainly relevant to that defense because, based on that evidence, a jury could conclude that Minley had believed Robinson would not commit child abuse at all." (Exhibit 4 at ¶11).  The Court of Appeals recognized the Petitioner's right to present evidence in her defense.

---

[1]   This case was and is being cited pursuant to Arizona Supreme Court *Rule 111(c)(1)(A)*, which allows a Memorandum Decision to be cited to establish the law of the case; and *Rule 111(c)(1)(C)* for persuasive value.

As a result of the ruling on the Special Action, the defense offered a voluntary intoxication instruction, so that it could argue as the law that Mr. Robinson's mental state occurred as the result of involuntary intoxication due to the drugs that were administered to him in having his teeth extracted.[2]  This had a direct relationship to the causation of the death and contradicted the accomplice liability instruction requested by the State and given by the trial court.

This was the only evidence that proved that James Robinson's actions were caused by the involuntary intoxication, and, thus, could not be imputed to Ms. Minley.  By failing to give the instruction that went to the very heart of the case, the defense was effectively precluded from arguing the full defense to the jury to challenge what was ultimately her conviction based on accomplice liability.[3]  Without the instruction, the jury was left to speculate about why the evidence was even presented, and, as a result, did not give due consideration to Ms. Minley's defense.

---

[2]  This evidence included the fact that Mr. Robinson's actions were caused by his vulnerability to the drugs that were administered to him on the morning of the incident, when he had his wisdom teeth pulled.  The drugs, combined with his brain impairment from his work fueling jets in the Air Force, provided the defense in the case.

[3]  At the time of settling jury instructions, the trial court stated, "For the reasons stated in the State's objection, the Court concurs and will respectfully overrule the defendant's request to include 18 and sustain the State's objection, finding that it is essentially covered by the Court's accomplice instruction." (R.T. 3/14/17, p. 4, lines 6-15).

The court in allowing an accomplice instruction to impose certain mandatory presumptions by the jurors, in relation to the intent to commit the crime of child abuse, violated Ms. Minley's due process rights. By ruling in that manner, the trial court effectively lowered the State's burden of proving every element of the offenses charged, and negated the Court of Appeals' special action ruling as to co-defendant Robinson's behavior and involuntary, drug-induced actions relevant to the Petitioner. See *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989).

The trial court and ultimately the Arizona Court of Appeals, Division Two (the very court that granted relief on the Special Action), failed to consider the implications that the failure to give the requested instruction would have on the issue of accomplice liability. In *United States v. Sayetsitty*, 107 F.3d 1405, 1411-1412 (9th Cir. 1997), the Ninth Circuit Court of Appeals determined that it was plain error for the court to fail to give a voluntary intoxication instruction as it related to aiding and abetting. The court recognized that the law relating to aiding and abetting includes an element of specific intent that goes beyond that of the mental state for the principal crime. The prosecution must prove that the person who allegedly aided and abetted, "had the specific intent to facilitate the commission of the crime committed by the co-defendant."

In this case, the jury convicted Ms. Minley without finding that she had the necessary intent to be an accomplice.  See *United States v. Paul*, 37 F.3d 496, 500 (9th Cir. 1994).  The jury was not permitted to consider evidence relating to Ms. Minley's mental state, and was improperly permitted to impute Mr. Robinson's culpability and a mental state that Ms. Minley never possessed.  *Montana v. Engelhoff*, 518 U.S. 37, 65, 116 S.Ct. 2013, 2028, 135 L.Ed.2d 361 (1996) (Justice Ginsburg concurring in the judgment).

The use of involuntary intoxication in defense of Mr. Robinson's intent clearly went directly to causation and the required element of intent to commit child abuse. This was critical in light of the felony murder statute allowing the "intent" element of that crime to substitute for the proven element for a first degree murder.  If Mr. Robinson's intent could be negated by involuntary intoxication, no intent could be imputed to Ms. Minley as his purported accomplice.   Ms. Minley was effectively denied the constitutional right to have the jury consider the defenses allowed to negate an element of the offense. *Sayetsitty*, 107 F.3d at 1413-1414.

Without the proper instructions, the defense was virtually precluded from arguing its position.  Even though, to some extent, the issue was argued, the effectiveness of the argument was precluded, as there was no law to support that position given to the jury.  There was no basis for the jury to accept the evidence and

10

consider it in the manner in which it should have been considered.  As the United States Supreme Court stated in *Boyde v. California*, 494 U.S. 370, 384, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), "arguments of counsel generally carry less weight with a jury than do instructions from the court."

In this case, though the instruction relating to accomplice liability was a correct statement of the law, it was misleading to the jury and unconstitutional as applied. It was objectively unreasonable for the state appellate court to determine that there was no reasonable likelihood that the jury convicted Ms. Minely on a mistaken understanding of Arizona (and federal) law.

The question becomes whether the jury believed that the Petitioner only assisted the child abuse as an accomplice, or whether the jury realized that in order to find her guilty, the State was required to show that she aided in what she knew or should have known was intended to be child abuse.  The evidence was totally lacking that she intended to do anything more than discipline her child.

**GROUND TWO:**

## THE TRIAL COURT ERRED AND THE COURT OF APPEALS FAILED TO RECOGNIZE THE INSUFFICIENCY OF THE EVIDENCE THAT PETITIONER FAILED TO OBTAIN MEDICAL ATTENTION

The motion for directed verdict pursuant to *Rule 20* of the *Arizona Rules of Criminal Procedure* was denied by the trial court, when there was insufficient

information to support that Ms. Minley knew that her son needed medical treatment and failed to seek it for him.

Dr. David Posey, a forensic pathologist, was called as a witness for the defense. He agreed with the State's pathologist, Dr. Singh, about the cause of death as being blunt force injury that resulted in hemorrhage, shock, and rhabdomyolysis. Dr. Posey's testimony, based on scientific research and knowledge, indicated that the injuries that caused the death of the child were inflicted between ten (10) and twelve (12) hours prior to the drawing of his blood at the hospital upon his admission at 12:08 p.m. on March 21, 2013. (R.T. 3/14/17, p. 26, lines 2-6).

Dr. Singh agreed that the rhabdomyolysis was a slow process, and it would have taken approximately twelve (12) hours to occur. She also stated that the child's brain had to have been without oxygen for hours, not minutes. Therefore, her conclusions were the same as those of Dr. Posey. She negated any argument that any delay, if there had been a delay in calling 9-1-1 or obtaining treatment for the child the following morning, contributed to the death.

The evidence and the prosecutor's argument supported the facts that: 1) the State had no idea and produced little evidence to show that Judy Minley knew of the medical state of her son during the late night hours of March 20 or the early morning hours of March 21; 2) the State was willing to concede that Ms. Minley might not

have known about her son's condition until the morning; and 3) the State indicated it might have been around an hour (approximating) between the time that Ms. Minley arose and then called 9-1-1.

Dr. Posey's testimony, that was unrefuted by any witness for the State, indicated that even if there had been a delay in seeking medical assistance, it would not have changed the outcome. Only if he had been treated six (6) to twelve (12) hours prior, would it have ever made a difference to the child's condition.

In order to convict Ms. Minley on the charge of child abuse on the basis of her failure to obtain medical care for the child, the State had to prove that Judy Minley 1) failed to obtain prompt medical care, and 2) that the delay caused increased harm to the child. Arizona law and federal law provides that in fair administration of justice and due process, jurors are not permitted to speculate about medical conditions or treatment. No evidence was produced to show that any delay on the part of Ms. Minley contributed to the death of her son.

There was no showing that any purported delay occurred, nor if there were a delay, that it was a contributing cause of his death. *State v. Bennett*, 213 Ariz. 562 ¶¶24, 28, 29, 146 P.3d 63, 68-69 (2006) (State needed to show that delay in treatment was a cause of death); *State v. Sanchez*, 181 Ariz. 492, 494, 892 P.2d 212, 214 (App.1995), (speculation alone cannot support jury's determination of guilt). As the

United States Supreme Court stated in *Burrage v. United States*, 571 U.S. 204, 134 S. Ct. 881, 187 L. Ed. 2d 715 (2014), the accused should not have been held liable for the enhanced penalty that was applied in this case.  The "but-for causality" was not proven by any quantum of evidence in this case.  *Id*. at 513, 134 S.Ct. at 881.

The trial court failed to follow the holding of the Arizona Supreme Court in *State v. Bennett*, 213 Ariz. at ¶ 5.  In that case, the trial court correctly instructed the jury that the defendant could be convicted of felony murder **only if her delay in seeking medical treatment caused the death**.  The State was required to show that the death "would not have happened" without the delay in seeking medical treatment.  *State v. Bennett*, 213 Ariz. 567, ¶ 23.

As a result, the Petitioner was denied her basic constitutional rights to due process in the presentation of evidence and the jury's consideration of the instructions as they specifically related to the facts of the case.  There was no evidence to support a finding that the Petitioner was guilty on the charge of failure or delay to seek medical attention.  The conviction on this charge violated Petitioner's rights to due process guaranteed by the Fourteenth Amendment to the United States Constitution.  *Garner v. State of Louisiana.*, 368 U.S. 157, 173–74, 82 S. Ct. 248, 257, 7 L. Ed. 2d 207 (1961).  The issue of delay in seeking medical attention should never have gone to the jury.

14

**GROUND THREE:**

## ALL OF THE ELEMENTS OF THE CHARGES WERE
## NOT PROVEN BEYOND A REASONABLE DOUBT

The due process clause guarantees that a defendant will not be convicted on proof other than beyond a reasonable doubt "of every fact necessary to constitute the crime with which [s]he is charged." *In Re Winship*, 397 U.S. 358, 354, 90 S.t. 1068, 1073, 25 L.Ed.2d 368 (1970). Under the circumstances of this case, there needed to be a causal connection between Ms. Minley's actions and her son's death. The causal element was mandated by A.R.S. § 13-203(A)(1), that a conduct must cause a result, and "but for" the conduct, the result would not have occurred. In order to prove causation, it had to be proven that the Petitioner actually caused the result, the death of her child.

In a felony murder case such as this, causation is key. As a result, a proximate cause instruction was offered by the defense, and it should have been given by the court. Causation became an element of the charge, and the State had the burden of proving what and who actually caused the death of the child.

The prosecution attempted to avoid arguing that co-defendant, James Robinson, was the person who inflicted the blows that ultimately caused the death of the child. Yet, the cause of death was the major issue. The entire cause of the

injuries to the child rested on the criminal liability of the person who actually inflicted the blows.  The "prosecution [had to] prove that the defendant's act or omission was the proximate cause of the death of the victim." *United States v. Main*, 113 F.3d 1046 (9th Cir. 1997)

## ADDITIONAL QUESTIONS:

13.   The Petitioner sought review in the highest state court having jurisdiction over the action on all of the issues stated, and she has exhausted her state appellate rights on these issues.

14.   No petition, application, or motion has been filed in a federal court regarding the conviction that is being challenged in this petition.

15.   There is no petition or appeal now pending in any court, either state or federal relating to the judgment being challenged in this petition.

16.   Attorneys who represented Ms. Minley at the following stages:

(a)   There was no preliminary hearing.  The Petitioner was charged by indictment.

(b)   At arraignment: The Petitioner was represented by Erin and Michael Carillo, 23 North Stewart Avenue, Tucson, Arizona 85716.

(c)   At trial: The Petitioner was represented by Brick P. Storts, III, and David Basham, 271 North Stone Avenue, Tucson, Arizona 85701.

(d)     At sentencing: The Petitioner was represented by Brick P. Storts, III, and David Basham, 271 North Stone Avenue, Tucson, Arizona 85701.

(e)     On Appeal: The Petitioner was represented by Brick P. Storts, III, 271 North Stone Avenue, Tucson, Arizona 85701.

(f)     There have been no other post-conviction proceedings.

(g)     There has been no appeal from any post-conviction proceeding.

17.     There is no other sentence being served from a conviction other than the conviction in this Petition.

18.     Timeliness of Petition.   The final state judgment and mandate occurred within the past one (1) year, and this petition has been filed within the permitted time limitation.

Submitted this    8th    day of October, 2019.

**BARTON & STORTS, P.C.**

 *s/ Brick P. Storts, III*
Brick P. Storts, III
Attorney for Petitioner

17

## <u>CERTIFICATE OF SERVICE</u>

I, Brick P. Storts, III, hereby certify that on this  8th   day of October, 2019,

the foregoing Petition for Writ of Habeas Corpus and Appendices were e-filed with

the Clerk of the United States District Court, using the CM/ECF System for filing.

I further certify that copies of the Petition for Writ of Habeas Corpus and

Appendices were delivered/mailed this  8th  day of October, 2019, by Liddy Legal

Support Services to the following:

Office of the Arizona Attorney General
Criminal Appeals Section
400 W. Congress, # S-315
Tucson, Arizona 85701

A copy of this Petition for Writ of Habeas Corpus and Appendices were also

sent by first-class mail this  8th   day of October, 2019 to the Petitioner as follows:

Judy Minley, # 318892
ASPC - Perryville
Santa Cruz Unit
P.O. Box 3200
Goodyear, AZ 85338

DATED this  8th  day of October, 2019.

BARTON & STORTS, P.C.

 *s/ Brick P. Storts, III*
Brick P. Storts, III
Attorney for Petitioner

18