**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Judy Minley, | No. CV-19-0490-TUC-SHR (BGM) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| David Shinn, *et al.* | |
| Respondents. | |

Currently pending before the Court is Petitioner Judy Minley's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("Petition") (Doc. 1).  Respondents have filed an Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 13), and Petitioner replied (Doc. 19).  The Petition (Doc. 1) is ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Macdonald for Report and Recommendation.  The Magistrate Judge recommends that the District Judge deny the Petition (Doc. 1).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      *Initial Charge, Trial, and Sentencing*

On April 2, 2013, Petitioner was indicted on one count of first degree murder, and two counts of child abuse.  Answer (Doc. 13), *State v. Robinson*, No. CR20131358-002, Indictment (Pima Cnty. Super. Ct. Apr. 2, 2013) (Exh. "A") (Doc. 13-1).  The Arizona

---

[1] Rules of Practice of the United States District Court for the District of Arizona.

1  Court of Appeals stated the facts[2] as follows:

2         On March 20, 2013, Minley beat her four-year-old son, J.D. with a
3  sandal for getting a drink of water out of a bathroom sink without her
   permission while he was being punished for other behavior.  When she felt
4  the beating did not put enough "fear in him," she told her boyfriend James
5  Robinson to take over, retreated to a bedroom to smoke marijuana, and heard
   Robinson brutally beat the child with the sandal in the next room.  When the
6  sandal broke apart during the assault on the child, Minley taped it up so that
   Robinson could continue the beating.
7
8         The next morning, J.D. lapsed into unconsciousness due to
   complications from severe bruising over a large percentage of his body.
9  After Minley and Robinson unsuccessfully tried to revive him, Minley called
10 9-1-1 while Robinson carried the unconscious child to the apartment leasing
   office seeking help.  An emergency squad arrived minutes later and took the
11 child to the hospital for treatment, but he never recovered and died from his
   injuries two days later.
12
13        At the end of a ten-day trial, the jury convicted Minley of one count
   of first-degree murder and two counts of intentional or knowing child abuse
14 under circumstances likely to cause death or serious injury – one for beating
   J.D. and the other for failing to timely seek medical attention for him.
15

16 Answer (Doc. 13), *State v. Minley*, No. 2 CA-CR 2017-0173, Mem. Decision at 8[3] (Ariz.

17 Ct. App. Dec. 21, 2018) (Exh. "B") (Doc. 13-1); *see also* Answer (Doc. 13), *State v. Minley*,

18 No. CR-20131358-002, Verdicts (Pima Cnty. Super. Ct. Mar. 16, 2017) (Exhs. "C," "D,"

19 "E") (Doc. 13-1).  The trial court sentenced Petitioner to an aggravated term of natural life

20 for the first degree murder charge; a presumptive term of seventeen (17) years

21 imprisonment for child abuse—beating the victim with a sandal, to be served consecutively

22 after the first degree murder sentence; and a presumptive term of seventeen (17) years

23 imprisonment for child abuse—failing to seek medical attention for the victim, to be served

24 _____

25        [2] As these state court findings are entitled to a presumption of correctness and Petitioner
   has failed to show by clear and convincing evidence that the findings are erroneous, the Court
26 hereby adopts these factual findings.  28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465,
   473–74, 127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007); *Wainwright v. Witt*, 469 U.S. 412, 426,
27 105 S. Ct. 844, 853, 83 L. Ed. 2d 841 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519, 102 S. Ct.
   1198, 1204, 71 L. Ed. 2d 379 (1982).
28
          [3] Page citations refer to the CM/ECF page numbers, unless otherwise noted.

1   consecutively after the first degree murder and child abuse sentences.  Answer (Doc. 13),
2   *State v. Minley*, No. CR20131358-002, Minute Entry at 32–33 (Pima Cnty. Super. Ct. May
3   4, 2017) (Exh. "F") (Doc. 13-1).

4   ### B.   *Direct Appeal*

5   On May 1, 2017, Petitioner filed her notice of appeal.  Answer (Doc. 13), Def.'s
6   Not. of Appeal, *State v. Minley*, No. CR-2013-1358-002 (Pima Cnty. Super. Ct. May 1,
7   2017) (Exh. "G") (Doc. 13-1).  On February 14, 2018, Petitioner filed her opening brief
8   and alleged four (4) grounds for relief.  *Id.*, Appellant's Opening Br., *State v. Minley*, No.
9   2CA-CR-2017-0173 (Ariz. Ct. App. Feb. 14, 2018) (Exh. "H") (Doc. 13-1).   First,
10  Petitioner alleged that "[t]he trial court erred in failing to give a voluntary intoxication
11  instruction."  *Id.*, Exh. "H" at 53–59.  Next, Petitioner argued that the trial court erred in
12  its denial of Petitioner's motion for a directed verdict pursuant to Rule 20, Arizona Rules
13  of Criminal Procedure.  *Id.*, Exh. "H" at 59–64.  Third, Petitioner asserted that the state
14  failed to present sufficient proof for each element of the charges in violation of the Due
15  Process clause.  *Id.*, Exh. "H" at 64–67.  Fourth, Petitioner alleged that the state vouched
16  for its case during closing arguments in violation of the Due Process clause.  *Id.*, Exh. "H"
17  at 67–71.  On June 25, 2018, the State filed its Answering Brief.  *See* Answer (Doc. 13),
18  Appellee's Answering Br., *State v. Minley*, No. 2 CA-CR 2017-0173 (Ariz. Ct. App. June
19  25, 2018) (Exh. "J") (Doc. 13-1).  On September 21, 2018, Petitioner replied.  *See* Answer
20  (Doc. 13), Appellant's Reply Br., *State v. Minley*, No. 2 CA-CR 2017-0173 (Ariz. Ct. App.
21  Sept. 21, 2018) (Exh. "I") (Doc. 13-1).

22  On December 21, 2018, the Arizona Court of Appeals affirmed Petitioner's
23  convictions and sentences.  *See* Answer (Doc. 13), *State v. Minley*, No. 2 CA-CR 2017-
24  0173, Mem. Decision (Ariz. Ct. App. Dec. 21, 2018) (Exh. "B") (Doc. 13-1).  The appellate
25  court observed that "[a] trial court must grant a motion for judgment of acquittal 'if there
26  is no substantial evidence to support a conviction.'"  *Id.*, Exh. "B" at 9 (quoting Ariz. R.
27  Crim. P. 20(a)(1)).   The appellate court provided a detailed review of the evidence
28  presented at trial.  *Id.*, Exh. "B" at 10–15.

1    The appellate court observed that "[w]hen 'circumstances likely to produce death
2  or serious physical injury' exist, a person may be convicted for knowing or intentional
3  child abuse on any of several theories."  *Id.*, Exh. "B" at 15 (quoting A.R.S. § 13-
4  3623(A)(1)).  The court further noted that "if a person 'ha[s] the care or custody of [the]
5  child,' such a person commits that offense if the person 'causes or *permits* the person or
6  health of the child . . . to be injured.'"  *Id.*, Exh. "B" at 15 (alterations and emphasis in
7  original) (quoting (A.R.S. § 13-3623(A)(1)).  "Alternatively, the offense is committed if
8  she 'causes or permits a child . . . to be placed in a situation where the person or health of
9  the child . . . is endangered.'"  Answer (Doc. 13), Exh. "B" at 15 (alterations in original)
10  (quoting A.R.S. § 13-3623(A)(1)).  Upon further review of the evidence, the appellate court
11  opined that "Minley could be properly convicted for the beating under § 13-3623(A)(1)
12  because a reasonable juror could conclude beyond a reasonable doubt that Minley
13  knowingly permitted the injuries, regardless of whether she struck the blows herself."  *Id.*,
14  Exh. "B" at 16 (citing *State v. West*, 238 Ariz. 482, ¶ 30 (Ct. App. 2015)).  As such, the
15  court held that "[t]he evidence was sufficient to support her conviction for child abuse
16  based on the beating."  *Id.*, Exh. "B" at 17.

17    The appellate court further held that "the trial court [did not] err finding that
18  sufficient evidence supported Minley's child abuse conviction for failure to seek medical
19  attention."  *Id.*, Exh. "B" at 17.  The court noted that "Section 13-3623(A)(1) makes
20  punishable a caretaker's knowing or intentional delay in seeking medical treatment that
21  endangers the child by increasing the child's risk of harm."  *Id.*, Exh. "B" at 17 (citing
22  *West,* 238 Ariz. at ¶ 10; *State v. Fernane*, 185 Ariz. 222, 224 (Ct. App. 1995)).  The
23  appellate court found that Petitioner's "admissions [we]re substantial evidence that Minley
24  knew the child needed medical treatment[,] . . . [and] that Minley's delay increased the risk
25  of harm to J.D."  Answer (Doc. 13), Exh. "B" at 17.

26    Assessing the sufficiency of the evidence regarding Petitioner's first-degree murder
27  conviction, the appellate court observed that a "person is guilty of first-degree murder if
28  she commits intentional or knowing child abuse under § 13-3623(A)(1) and 'in the course

- 4 -

1    of and in furtherance of the offense . . . , the person or another person causes the death of

2    any person.'" *Id.*, Exh. "B" at 17 (alteration in original) (quoting A.R.S. § 13-1105(A)(2)).

3    The appellate court held that "[s]ubstantial evidence . . . showed that the beating was the

4    proximate cause of the child's death supporting Minley's first-degree murder conviction."

5    *Id.*, Exh. "B" at 18.

6         Regarding Minley's assertion that "the trial court erred in failing to give the jury an

7    intoxication instruction she requested[,]" the appellate court noted that "[t]he record shows

8    that the court removed the requested voluntary intoxication instruction with Minley's

9    consent, and denied only her request for a voluntary *act* instruction[,]" which she did not

10   contest.  Answer (Doc. 13), Exh. "B" at 18 (emphasis in original).  The court found that

11   "Minley therefore has waived all but fundamental error review on this issue."  *Id.*, Exh.

12   "B" at 18 (citing *State v. Felix*, 234 Ariz. 118, ¶ 15 (Ct. App. 2014)).  The appellate court

13   opined that "Minley was not entitled to an intoxication instruction[,] [because] [h]er

14   defense related to Robinson's alleged temporary intoxication at the time of J.D.'s beating,

15   resulting from taking drugs as prescribed, but the relevant instruction only applies to a

16   *defendant's* intoxication." *Id.*, Exh. "B" at 18 (citing Rev. Ariz. Jury Instr. ("RAJI") Stand.

17   Crim. 5.03-21a (4th ed. 2016)).  The appellate court observed that "Minley, not Robinson,

18   was the defendant here, and the state was not required to establish Robinson's mental state

19   to prove that Minley committed child abuse."  *Id.*, Exh. "B" at 18–19 (citing A.R.S. § 13-

20   3623(A)(1); *State v.* Wall, 212 Ariz. 1, ¶ 20 (2006)).  The appellate court opined that "[t]o

21   the extent that the lack of an instruction 'precluded [Minley] from backing [her] argument

22   with a statement of the law,' as she contends, it denied only the opportunity to make a

23   misleading, legally inaccurate argument that Robinson's state of mind could be imputed to

24   her."  *Id.*, Exh. "B" at 19 (alterations in original).  The appellate court also rejected

25   Petitioner's assertion that "by not providing an instruction relating to Robinson's alleged

26   intoxication, the trial court 'negated this Court's special action ruling[.]'"  *Id.*, Exh. "B" at

27   19.  The appellate court noted that "the trial court allowed [Petitioner] to present the

28   evidence at issue in the special action; as Minley in fact acknowledges."  *Id.*, Exh. "B" at

19.  As such, the appellate court held that "the trial court did not err in failing to give the jury an intoxication instruction."  *Id.*, Exh. "B" at 19.

The appellate court also reviewed a portion of the state's closing arguments and found that "none of the cited statements constitute[d] either type of vouching[.]"  *Id.*, Exh. "B" at 21.  The appellate court "decline[d] Minley's request for a new trial on this basis."  *Id.*, Exh. "B" at 22 (citing *State v. Van Den Berg*, 164 Ariz. 192, 196 (Ct. App. 1990)).  Accordingly, the appellate court affirmed Petitioner's convictions and sentences.  *Id.*, Exh. "B" at 22.

On January 17, 2019, Petitioner sought review by the Arizona Supreme Court.  *See* Answer (Doc. 13), Petr.'s Pet. for Review of Decision by the Ariz. Ct. App., *State v. Minley*, No. CR-19-0019 (Ariz. Jan. 17, 2019) (Exh. "K") (Doc. 13-1).  On May 28, 2019, the Arizona Supreme Court denied review.  Answer (Doc. 13), *State v. Minley*, No. CR-19-0019, Mem. (Ariz. May 28, 2019) (Exh. "L") (Doc. 13-1).

### C.    *The Instant Habeas Proceeding*

On October 18, 2019, Petitioner filed her Petition for Writ of Habeas Corpus (Doc. 1).  Petitioner asserts three (3) grounds for relief.  *Id.* at 6–16.  Petitioner claims that her "due process right to pursue a full and complete defense to the charges against her" were violated when the trial court failed to instruct on her co-defendant's intoxication.  *Id.* at 6. Petitioner asserts that she offered a voluntary intoxication instruction, which was denied.  *Id.* at 8.  Petitioner urges that "[w]ithout the proper instructions, the defense was virtually precluded from arguing its position[,] [and] [e]ven though, to some extent, the issue was argued, the effectiveness of the argument was precluded, as there was no law to support that position given to the jury."  *Id.* at 10.  Petitioner further asserts that although "the instruction relating to accomplice liability was a correct statement of the law, it was misleading to the jury and unconstitutional as applied."  Petition (Doc. 1) at 11.  Next, Petitioner asserts that the trial court erred in denying her motion for directed verdict pursuant to Rule 20, Arizona Rules of Criminal Procedure, because "there was insufficient information to support that Ms. Minley knew that her son needed medical treatment and

failed to seek it for him." *Id.* at 11–12.  Petitioner urges that "[t]he conviction on this charge violated [her] rights to due process guaranteed by the Fourteenth Amendment to the United States Constitution." *Id.* at 14 (citations omitted).  Third, Petitioner asserts that her due process rights were violated because each element of the charges were not proven beyond a reasonable doubt. *Id.* at 15.  Specifically, Petitioner asserts that the trial court's alleged failure to give a proximate cause instruction that she offered resulted in this violation. *Id.*

On March 20, 2020, Respondents filed their Answer (Doc. 13) and on May 8, 2020, Petitioner replied (Doc. 19).

## II.    STANDARD OF REVIEW

### A.    *In General*

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United States*." 28 U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011).  Correcting errors of state law is not the province of federal habeas corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991).  Ultimately, "[t]he statute's design is to 'further the principles of comity, finality, and federalism.'"  *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S. Ct. 2842, 2854, 168 L. Ed. 2d 662 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337, 123 S.

Ct. 1029, 154 L. Ed. 2d 931 (2003)).  Furthermore, this standard is difficult to meet and highly deferential "for evaluating state-court rulings, [and] . . . demands that state-court decisions be given the benefit of the doubt."  *Pinholster*, 563 U.S. at 181, 131 S. Ct. at 1398 (citations and internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, mandates the standards for federal habeas review.  *See* 28 U.S.C. § 2254.  The "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013).  Federal courts reviewing a petition for habeas corpus must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)). Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect.  *Id.*, 550 U.S. at 473, 127 S. Ct. at 1939; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013).  Such a determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when the court applies the principles to the facts before it, arrives at a different result.  *See Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905 (9th Cir. 2004).  "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 S. Ct. at 10 (quoting *Harrington*, 562 U.S. at 103, 131 S. Ct. at 786–87) (alterations in original).

### B.    *Exhaustion of State Remedies*

Prior to application for a writ of habeas corpus, a person in state custody must exhaust all of the remedies available in the State courts.  28 U.S.C. § 2254(b)(1)(A).  This "provides a simple and clear instruction to potential litigants: before you bring any claims

to federal court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509, 520, 102 S. Ct. 1198, 1204, 71 L. Ed. 2d 379 (1982). As such, the exhaustion doctrine gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349, 158 L. Ed. 2d 64 (2004) (internal quotations omitted). Moreover, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose*, 455 U.S. at 518, 102 S. Ct. at 1203 (internal citations omitted). This upholds the doctrine of comity which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S. Ct. 587, 590, 94 L. Ed. 761 (1950)).

Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as the applicant "has the right under the law of the State to raise, by any available procedure the question presented." 28 U.S.C. § 2254(c). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971). The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 31–33, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and finding the justices' opportunity to read a lower court decision addressing the federal claims insufficient to support fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds). Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court."

1    *Baldwin*, 541 U.S. at 29, 124 S. Ct. at 1349.  "Generally, a petitioner satisfies the exhaustion

2    requirement if he properly pursues a claim (1) throughout the entire direct appellate process

3    of the state, or (2) throughout one entire judicial postconviction process available in the

4    state."  *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz,

5    *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).

6    In Arizona, however, for non-capital cases "review need not be sought before the

7    Arizona Supreme Court in order to exhaust state remedies."  *Swoopes v. Sublett*, 196 F.3d

8    1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz.

9    2007); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998).  Additionally, the

10   Supreme Court has further interpreted § 2254(c) to recognize that once the state courts

11   have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the

12   same issues already decided upon direct review.  *Castille v. Peoples*, 489 U.S. 346, 350,

13   109 S. Ct. 1056, 1060, 103 L. Ed. 2d 380 (1989).

14   ## C.    *Procedural Default*

15   ### 1.   **In General**

16   "A habeas petitioner who has defaulted his federal claims in state court meets the

17   technical requirements for exhaustion; there are no state remedies any longer 'available' to

18   him."  *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 650

19   (1991).  The Ninth Circuit Court of Appeals explained the difference between exhaustion

20   and procedural default as follows:

21   > The exhaustion doctrine applies when the state court has never been
22   > presented with an opportunity to consider a petitioner's claims and that
23   > opportunity may still be available to the petitioner under state law.  In
24   > contrast, the procedural default rule barring consideration of a federal claim
25   > applies only when a state court has been presented with the federal claim, but
26   > declined to reach the issue for procedural reasons, or if it is clear that the state
27   > court would hold the claim procedurally barred.  *Franklin v. Johnson*, 290
28   > F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations
     > omitted).  Thus, in some circumstances, a petitioner's failure to exhaust a
     > federal claim in state court may *cause* a procedural default.  *See Sandgathe
     > v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975,
     > 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner

1
2
3

      failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

4
5
6

*Cassett v. Stewart*, 406 F.3d 614, 621 n. 5 (9th Cir. 2005).  "Together, exhaustion and procedural default promote federal-state comity."  *Shinn v. Ramirez*, 212 L. Ed. 2d 713, 142 S. Ct. 1718, 1732 (2022).

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

      Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways.  First, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Coleman*, 501 U.S. at 735 n.1, 111 S. Ct. at 2557 n.1 (citations omitted).  In this circumstance, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy."  *Cassett*, 406 F.3d at 621 n.6 (quotations and citations omitted) (emphasis in original).  Second, where the petitioner presented his claims to the state court, which denied relief based "on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman*, 501 U.S. at 728, 111 S. Ct. at 2554.  Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, [because] resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory."  *Id.*  This is true whether the state law basis is substantive or procedural.  *Id.* (citations omitted).

22
23
24
25
26
27
28

      In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial or on appeal or in any previous collateral proceeding[.]" Ariz. R. Crim. P. 32.2(a)(3) (2022).  If an asserted claim "raises a violation of a constitutional right that can only be waived knowingly, voluntarily and personally by the defendant[,]" such claim is not automatically precluded.  *Id.*  Neither Rule 32.2, nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver.  *See id.*; *see also Stewart v. Smith*,

202 Ariz. 446, 46 P.3d 1067 (2002).  The Ninth Circuit Court of Appeals recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations." *Cassett*, 406 F.3d at 622.

## 2.  Overcoming a Procedural Bar

Where a habeas petitioner's claims have been procedurally defaulted, a petitioner must show cause and actual prejudice to overcome the bar on federal review.  *Teague v. Lane*, 489 U.S. 288, 298, 109 S. Ct. 1060, 1068, 103 L. Ed. 2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534, 106 S. Ct. 2661, 2666, 91 L. Ed. 2d 434 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial.").  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims.").  Actual prejudice requires a habeas petitioner to "show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494, 106 S. Ct. at 2648 (emphasis in original) (internal quotations omitted).  Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts. *Id.*, 106 S. Ct. at 2649.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct.

1558, 1572–73, 71 L. Ed. 2d 783 (1982)).   "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'"  *Herrara v. Collins*, 506 U.S. 390, 404, 113 S. Ct. 853, 862, 122 L. Ed. 2d 203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S. Ct. 2616, 2627, 91 L. Ed. 2d 364 (1986)).   Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Herrara*, 506 U.S. at 404, 113 S. Ct. at 862.  Further, to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).

## III.   STATUTE OF LIMITATIONS

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation.  *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002).  The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody.  28 U.S.C. § 2244(d)(1).  Section 2244(d)(1) provides that the limitations period shall run from the latest of:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Respondents do not dispute the timeliness of Minley's petition, and the Court has independently reviewed the records and finds that her Petition (Doc. 1) is timely pursuant to 28 U.S.C. § 2244(d)(1)(A).

## IV.    ANALYSIS

### A.  Ground One:    Due Process Right to a Full and Complete Defense

Plaintiff asserts that she "was precluded from properly arguing the crux of her defense because of the trial court's failure to instruct on intoxication that could be applied to her co-defendant" thereby violating Plaintiff's due process rights. Petition (Doc. 1) at 6–11.

As an initial matter, Petitioner did not present this issue as a due process violation to the state courts. *See* Answer (Doc. 13), Appellant's Opening Br., *State v. Minley*, No. 2CA-CR-2017-0173 (Ariz. Ct. App. Feb. 14, 2018) (Exh. "H") (Doc. 13-1). Petitioner alleged that "[t]he trial court erred in failing to give a voluntary intoxication instruction" without mention of due process. *Id.*, Exh. "H" at 53–59. As discussed in Section II.B., *supra*, the fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in her petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 31–33, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). Because Petitioner did not raise the federal claim in her direct appeal, it is procedurally defaulted. Respondents, however, did not assert procedural default. *See* Answer (Doc. 13). Procedural default is an affirmative defense, and failure to raise it results in waiver. *Franklin v. Johnson*, 290 F.3d 1223, 1232–33 (9th Cir. 2002). Accordingly, the Court will address the merits of Petitioner's claim.

"A faulty jury instruction will constitute a violation of due process only where the instruction by itself infects the entire trial to such an extent that the result conviction violates due process." *Hendricks v. Vasquez*, 974 F.2d 1099, 1106 (citing *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 400, 38 L.Ed.2d 368 (1973)).  Petitioner bears an "especially heavy" burden to demonstrate the failure to give an instruction was constitutional error.  *Id.* (citing *Henderson v. Kibbe*, 431 U.S. 145, 97 S. Ct. 1730, 52 L.Ed.2d 203 (1977)).  "Neither the term 'due process,' nor the concept of fundamental unfairness itself, is susceptible of precise and categorical definition, and no single test can guarantee that a judge will grant or deny habeas relief when faced with a similar set of facts." *Brecht v. Abrahamson*, 507 U.S. 619, 639–40, 113 S. Ct. 1710, 1723, 123 L.Ed.2d 353 (1993) (Stevens, J., *concurring*).  "Every allegation of due process denied depends on the specific process provided, and it is familiar learning that all 'claims of constitutional error are not fungible.'"  *Id.* at 640, 113 S. Ct. at 1723 (Stevens, J., *concurring*) (quoting *Rose v. Lundy*, 455 U.S. 509, 543, 102 S. Ct. 1198, 1216, 71 L.Ed.2d 379 (1982) (Stevens, J. *dissenting*)).  Furthermore, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."  *Estelle v. McGuire*, 502 U.S. 62, 71–72, 112 S. Ct. 475, 482, 116 L.Ed.2d 385 (1991).

Here, Petitioner urged that the voluntary act instruction that was given in her co-defendant's trial should be given.  Answer (Doc. 13), *State v. Minley*, No. CR20131358, Hr'g Tr.—Jury Trial, Day 7 at 84:5–87:19 (Pima Cnty. Super. Ct. Mar. 10, 2017) (Exh. "U") (Doc. 13-2).  The trial court summarized defense counsel's argument as "there [wa]s evidence [related to intoxication] from which the jury might conclude that Mr. Robinson couldn't have knowingly or intentionally committed these acts, and therefore Ms. Minley couldn't have been an accomplice to someone knowingly and intentionally . . . ." *Id.*, Exh. "U" at 85:13–18.  The State urged that the elements of child abuse include "permit[ting] the child to be placed in a situation where their health is endangered[,]" for which "involuntary intoxication is not a defense available to [Petitioner.]" *Id.*, Exh. "U" at 86:10–20, 87:11–16.

On direct review, the appellate court observed that "[t]he record shows that the court removed the requested voluntary intoxication instruction with Minley's consent, and denied only her request for a voluntary *act* instruction – a decision that Minley does not now contest."   Answer (Doc. 13), *State v. Minley*, No. 2 CA-CR 2017-0173, Mem. Decision at 18 (Ariz. Ct. App. Dec. 21, 2018) (Exh. "B").   The court found that "Minley therefore has waived all but fundamental error review on this issue."  *Id.*, Exh. "B" at 18 (citing *State v. Felix*, 234 Ariz. 118, ¶ 15 (Ct. App. 2014)).   The appellate court opined that "Minley was not entitled to an intoxication instruction[,] [because] [h]er defense related to Robinson's alleged temporary intoxication at the time of J.D.'s beating, resulting from taking drugs as prescribed, but the relevant instruction only applies to a *defendant's* intoxication." *Id.*, Exh. "B" at 18 (citing Rev. Ariz. Jury Instr. ("RAJI") Stand. Crim. 5.03-21a (4th ed. 2016)).   The appellate court observed that "Minley, not Robinson, was the defendant here, and the state was not required to establish Robinson's mental state to prove that Minley committed child abuse."  *Id.*, Exh. "B" at 18–19 (citing A.R.S. § 13-3623(A)(1); *State v.* Wall, 212 Ariz. 1, ¶ 20 (2006)).   The appellate court opined that "[t]o the extent that the lack of an instruction 'precluded [Minley] from backing [her] argument with a statement of the law,' as she contends, it denied only the opportunity to make a misleading, legally inaccurate argument that Robinson's state of mind could be imputed to her."  *Id.*, Exh. "B" at 19 (alterations in original).   The appellate court also rejected Petitioner's assertion that "by not providing an instruction relating to Robinson's alleged intoxication, the trial court 'negated this Court's special action ruling[.]'"  *Id.*, Exh. "B" at 19.   The appellate court noted that "the trial court allowed [Petitioner] to present the evidence at issue in the special action; as Minley in fact acknowledges."  *Id.*, Exh. "B" at 19.   As such, the appellate court held that "the trial court did not err in failing to give the jury an intoxication instruction."  *Id.*, Exh. "B" at 19.

Petitioner does not contest the appellate court's findings that she 1) consented to the removal of the requested voluntary intoxication instruction, and 2) did not contest the trial court's denial of her request for a voluntary *act* instruction.   Petitioner's consent at trial to

the removal of the requested voluntary intoxication instruction vitiates her due process argument on habeas review.  As such, Petitioner has failed to meet her "heavy burden" to show that the lack of a voluntary intoxication instruction "so infect[ed] the entire trial that the defendant was deprived of [her] right to a fair trial guaranteed by the due process clause of the fourteenth amendment." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988) (quoting *Tyler v. Wyrick*, 635 F.2d 752, 753 (8th Cir. 1980)).  Petitioner's claim will be denied.

### B. Ground Two: Insufficient Evidence

In Ground Two, Petitioner alleges that the trial court erred in denying her motion for directed verdict pursuant to Rule 20, Arizona Rules of Criminal Procedure, because "there was insufficient information to support that Ms. Minley knew that her son needed medical treatment and failed to seek it for him."  Petition (Doc. 1) at 11–12.  Petitioner further urged that "[t]he conviction on this charge violated [her] rights to due process guaranteed by the Fourteenth Amendment to the United States Constitution."  *Id.* at 14 (citations omitted).

### 1. Fair Presentation

As noted in Section III.B., *supra*, the fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition. *Baldwin v. Reese*, 541 U.S. 27, 31–33, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). "[A] petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).  In other words, "a petitioner must properly raise [a claim] on **every level** of direct review." *Id.* (emphasis added) (citing *Ortberg v. Moody*, 961 F.2d 135, 137 (9th Cir. 1992)); *see also Baldwin*, 541 U.S. at 29, 124 S. Ct. at 1349 (fair presentation requires a prisoner to raise his claims "in each appropriate state court").

Petitioner raised only the state law portion of this claim to the appellate court.  *See*

Answer (Doc. 13), Appellant's Opening Br. at 59–64, *State v. Minley*, No. 2CA-CR-2017-0173 (Ariz. Ct. App. Feb. 14, 2018) (Exh. "H") (Doc. 13-1).  She now asserts that "[w]hile Petitioner set forth state law in Argument II of her opening brief on appeal (O.B., Argument II ¶¶38-46), the argument clearly did segue directly into Argument III of the opening brief." Reply (Doc. 19) at 3.  However, "Judges are not like pigs, hunting for truffles buried in briefs." *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) (citations omitted).  Furthermore, "[e]very allegation of due process denied depends on the specific process provided, and it is familiar learning that all 'claims of constitutional error are not fungible.'" *Brecht v. Abrahamson*, 507 U.S. 619, 640, 113 S. Ct. 1710, 1723, 123 L.Ed.2d 353 (1993) (Stevens, J., *concurring*) (quoting *Rose v. Lundy*, 455 U.S. 509, 543, 102 S. Ct. 1198, 1216, 71 L.Ed.2d 379 (1982) (Stevens, J. *dissenting*)).  As such, the Court finds "[P]etitioner failed to exhaust state remedies and the court to which the petitioner would be required to present [her] claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1, 111 S. Ct. at 2557 n.1 (citations omitted); Ariz. R. Crim. P. 32.2, 33.2 (2022).

Even if this Court were to accept Petitioner's argument that she asserted a due process violation with regard to the sufficiency of the evidence of her failure to seek medical treatment for her son, the appellate court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729, 111 S. Ct. at 2553.  Accordingly, the Court finds Petitioner's Ground Two is procedurally defaulted.

## 2.  No Cause and Prejudice to Excuse Default

Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S. Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).  Petitioner has not met her burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S.

478, 494, 106 S. Ct. 2639, 2648, 91 L. Ed. 2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").  Neither has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [her] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).  The Court finds Petitioner has failed to meet the cause and prejudice standard or demonstrate a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 748, 111 S. Ct. at 2564 (citations and quotations omitted).  Accordingly, Petitioner's second claim is denied.

### C.  Ground Three:  Due Process—Reasonable Doubt

Plaintiff asserts that her due process rights were violated because each element of the charges were not proven beyond a reasonable doubt.  Petition (Doc. 1) at 15.  Specifically, Petitioner asserts that the trial court's alleged failure to give a proximate cause instruction that she offered resulted in this violation.  *Id.*  Petitioner raised this claim on direct appeal.  Answer (Doc. 13), Appellant's Opening Br. at 64–67, *State v. Minley*, No. 2CA-CR-2017-0173 (Ariz. Ct. App. Feb. 14, 2018) (Exh. "H") (Doc. 13-1).

It is well-established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [s]he is charged."  *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L.Ed.2d 368 (1970).  On habeas review considering the sufficiency of the evidence to support a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).  "Habeas corpus is an 'extraordinary remedy' available only to those persons whom

society has grievously wronged and for whom belated liberation is little enough compensation." *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th Cir. 2005) (quotations and citations omitted). This court "presume[s] the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S. Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)). Federal courts consider whether the state court's determination was unreasonable, not merely incorrect. *Id.*, 550 U.S. at 473, 127 S. Ct. at 1939.

On direct review, the state appellate court observed that "Minley argue[d] the court committed fundamental error by failing to give the jury a proximate cause jury instruction[;] . . . however, the court did give the jury a proximate cause instruction." Answer (Doc. 13), *State v. Minley*, No. 2 CA-CR 2017-0173, Mem. Decision at 18 (Ariz. Ct. App. Dec. 21, 2018) (Exh. "B"). As such, the appellate court found Petitioner's argument without merit. *Id.* The appellate court further found that "sufficient evidence supported the first degree murder conviction." *Id.*, Exh. "B" at 17. The appellate court stated, "A person is guilty of first-degree murder if she commits intentional or knowing child abuse under § 13-3623(A)(1) and 'in the course of and in furtherance of the offense . . . , the person or another person causes the death of any person.'" *Id.* (quoting A.R.S. § 13-1105(A)(2)). The appellate court held that the pathologist's testimony, as well as the child's treating physician, "described natural, foreseeable processes by which the severe bruising caused the child's organ failure and death." *Id.*, Exh. "B" at 18. Accordingly, the appellate court found "[s]ubstantial evidence thus showed that the beating was the proximate cause of the child's death supporting Minley's first-degree murder conviction." *Id.*

The Court finds that Petitioner has failed to meet her burden to show that the appellate court's findings were contrary to, or an unreasonable application of, clearly established Supreme Court precedent or resulted in a decision based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). As such, Petitioner's third claim will be denied.

1

2    **V.    CONCLUSION**

3          Based upon the foregoing, the Court finds that Petitioner Judy Minley's habeas

4    claims are either procedurally defaulted or without merit, and her Petition (Doc. 1) should

5    be denied.

6

7    **VI.    RECOMMENDATION**

8          For the reasons delineated above, the Magistrate Judge recommends that the District

9    Judge enter an order DENYING Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ

10   of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("Petition") (Doc. 1).

11         Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil Procedure,

12   any party may serve and file written objections within fourteen (14) days after being served

13   with a copy of this Report and Recommendation.  A party may respond to another party's

14   objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P.

15   72(b)(2).  No replies shall be filed unless leave is granted from the District Judge.  If

16   objections are filed, the parties should use the following case number: **CV-19-0490-TUC-**

17   **SHR**.

18         Failure to file timely objections to any factual or legal determination of the

19   Magistrate Judge may result in waiver of the right of review.

20         Dated this 27th day of January, 2023.

21

22

23

24                                    Honorable Bruce G. Macdonald
                                      United States Magistrate Judge

25

26

27

28